Benjamin P. Taylor, Esq. (023868)
**TAYLOR & GOMEZ, LLP**
2600 N. 44th Street, Suite B-101
Phoenix, Arizona 85008
Tel: (602) 325-8007
Fax: (602) 957-3257
bt@taylorgomezlaw.com
Attorneys for Plaintiff

**UNITED STATE DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Darnay Cockrell<br><br>Plaintiff,<br><br>vs.<br><br>City Of Mesa, Officer Helfrich (#25208), & Officer Brown (#24030)<br><br>Defendants. | Case No. CV-25-04535-PHX-JJT<br><br>**JOINT CASE MANGEMENT REPORT** |

The parties, in accordance with this Court's August 20, 2026 order, submit the following Joint Case Management Report.

1. The nature of the case, setting forth in brief statements (no more than one page per side) the factual and legal basis of Plaintiff's claims and Defendant's defenses;

<u>Plaintiff</u>

**Plaintiff brings 42 USC § 1983 claims against defendant police officers for excessive force and unlawful seizure in violation of Plaintiff's Fourth and Fourteenth Amendment rights. Plaintiff is a single parent raising his 5 year old daughter. The child's mother, Nicole, is a habitual substance abuser. Over the last five years Nicole has been in and out of jail, rehabilitation programs and has lived on the streets for extended periods. This is a continuing pattern in her life. On the morning of August 5, 2024, Nicole told plaintiff she was taking the**

**daughter to Detroit, in spite of the fact that she had no money or transportation. Plaintiff called the police. While plaintiff was on the phone with dispatchers, Nicole fled with the child. When plaintiff discovered Nicole and child were missing, he frantically ran out of apartment to find them. Defendant police officers arrived on scene as plaintiff was running down the stairs. Defendant officers told plaintiff to sit down and calm down. Plaintiff remained upset because it did not appear officers were focused on getting his daughter back. Defendant officer continued telling plaintiff to alternately sit down, sit on the grass, lean against the building, and lean on his car. Plaintiff was standing at the trunk of his car and was texting on his cell phone when the second defendant officer approached plaintiff. Defendants grabbed plaintiff and drove him to the pavement and handcuffed him. Defendants had no legal justification for seizing and detaining plaintiff or for driving him into the pavement and injuring him. The defendants' actions were intentional and illegal.**

<u>Defendants</u>**:**

**This case involves a call to 911 placed by the Plaintiff, to report that his daughter had been kidnapped by her mother. Plaintiff did not have a court order granting him custody and he had never been married to the mother. Multiple officers were dispatched and the mother/child were immediately contacted and stopped by police. Officer Helfrich responded to make contact with Plaintiff—wearing a uniform clearly identifying him as an officer. As Officer Helfrich approached, Plaintiff barreled into Officer Helfrich, pushing him aside and swinging his elbow toward Officer Helfrich's face as he tried to reach out to stop Plaintiff. Officer Helfrich told Plaintiff multiple times that officers were with his daughter and gave Plaintiff multiple commands to stop, sit down, sit on his car, to stop digging through his trunk, and that the parties needed to be separated as the investigation was undertaken. Plaintiff repeatedly ignored the commands given to him and instead yelled at Officer Helfrich and verbally challenged him. Plaintiff was verbally and emotionally charged and would not provide coherent information for Officer Helfrich to investigate. Plaintiff, who was significantly older than Officer Helfrich and stronger, used these differences to berate and threaten Officer Helfrich: "you in my fucking way and you lucky I didn't push you down." When Officer Helfrich responded by telling Plaintiff, "don't do that," Plaintiff again threatened him: "and why, what's going to happen? Nothing. Motherfucker. Nothing." Plaintiff's actions and demeanor signaled legitimate safety concerns for the officers. When Officer Brown arrived as backup, the decision was made to detain Plaintiff in handcuffs, which Plaintiff resisted by tensing his arms and refusing to put them behind his back. The two officers were eventually able to get Plaintiff to the ground and handcuff him, using the lowest levels of force available—soft empty hand techniques. When Plaintiff calmed down, he was unhandcuffed and after**

**interviewing witnesses confirming that the mother had not been involved with the child for years, the child was returned to Plaintiff on the scene. Defendants used reasonable force in responses to Plaintiff's actions and verbal threats. Defendants are entitled to qualified immunity.**

2. A list of the elements of proof necessary for each count of the Complaint and each affirmative defense. Where the burden of proof shifts, each party shall list the elements of proof that party must satisfy to prevail. The list of elements of proof must contain citations to relevant legal authority, (i.e., United States statutory or administrative law, United States Supreme Court case law, Ninth Circuit Court of Appeals case law, Arizona case law or statutory law, or other authority as required by choice of law rules);

**Plaintiff's Claims**:

**To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)**

**Excessive Force:**

**An excessive force claim is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The relevant inquiry is whether officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397, 109 S.Ct. 1865 (quotation and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 396-97, 109 S.Ct. 1865.**

**Unreasonable Seizure**:

**Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove the defendants deprived the plaintiff of this Fourth Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:**

1. **Defendants seized the plaintiff's person;**
2. **In seizing the plaintiff's person, defendants acted intentionally; and**
3. **The seizure was unreasonable. (9th Cir. 2025 Model Jury Instruction 9.22)**

**<u>Defendants' Defenses:</u> Defendants incorporate the defenses set forth in their Motion to Dismiss and their Answer.**
**Detention/Probable Cause/Community Caretaking:The investigatory detention of the Plaintiff was reasonable and justified by his combative and verbal threats. Regardless of whether there was reasonable suspicion or probable cause (based upon Plaintiff's later behavior and actions), the officers were acting within their community caretaking capabilities which rendered the seizure reasonable.**
**Force: Under the *Graham* factors, the Defendants' conduct was reasonable and justified. The defendants used minimal hands on only force in grabbing the Plaintiff's wrists. He was non-compliant and physically struggled, which resulted in minimal force to take him to the ground for handcuffing. Plaintiff suffered no injuries.**

3. The factual and legal issues genuinely in dispute (no more than one page per side), and whether they can be narrowed by stipulation or motion.

**<u>Plaintiff</u>:**

**Whether defendants' use of force was excessive.**
**Whether defendants' seizure of plaintiff was unreasonable.**
**Nature and extent of plaintiff's injuries.**
**Whether defendants are subject to punitive damages and if so, in what amount?**

Plaintiff does not believe these issues can be narrowed by stipulation or motion as they present disputed issues of fact to be resolved by a jury.

**<u>Defendants:</u>**

**Whether the officers were justified in placing Plaintiff in handcuffs for an investigatory detention due to his behavior**
**Whether there was probable cause to arrest Plaintiff for aggravated assault (shoving Officer Helfrich and swatting his arm away), threating Officer Helfrich, and resisting being handcuffed.**
**Whether the Defendant's use of force was justified.**
**Whether the Defendants are entitled to qualified immunity.**
**Whether the Plaintiff suffered any damages attributed to this incident.**
**Whether the Plaintiff had legal custody of his child as a non-custodial parent who was not married to the child's mother.**
**Whether Plaintiff is entitled to punitive damages for the de minimus force used on Plaintiff.**

Defendants dispute that there are factual issues and contend that all facts are documented on body camera. Pursuant to *Scott v. Harris*, the facts are to be viewed in the light depicted on the video footage.

4. The jurisdictional basis of the case, citing specific statutes.

**This Court has jurisdiction over Plaintiff's federal causes of action pursuant to 28 U.S.C. §§ 1331.**

5. Parties, if any, that have not been served, as well as parties that have not filed an Answer or otherwise appeared, including fictitious parties.

**All parties have been served and all have answered.**

6. The names of parties not subject to the Court's jurisdiction.

**None.**

7. Whether there are dispositive or partially dispositive issues to be decided by pretrial motions, and the legal issues about which any pretrial motions are contemplated.

**Plaintiff**:

**Defendants are seeking permission to file two qualified summary judgment motions, one "clearly established law" and the other on the constitutionality of the force . Plaintiff objects. In its ruling on defendants' motion to dismiss the Court already noted that *Blankenhorn v. City of Orange*, 485 F.3d 463, clearly established that, "gang-tackle and ground restraint may be excessive where suspect was not actively resisting." There is no need for defendants to file two motions.**

**Defendants:**
**Defendants request leave to file two Motions for Summary Judgment. Body camera captures the entirety of this event. This Court found that the body camera was outside the pleadings and thus could not be considered on the Defendants' previously filed Motion to Dismiss. The Court decided the Motion to Dismiss based solely on Plaintiff's allegations, several of which were withdrawn in the Amended Complaint. The undisputed facts on the body camera are wholly different from *Blankehnorn*, where the suspect was gang tackled and struck multiple times without any opportunity given to first comply. In**

**contrast, Plaintiff was told he was being put in handcuffs, he refused to comply and struggled, and minimal hands on only force with no strikes were used to put him into custody. As a result, Defendants request the ability to file an early Motion for Summary Judgment on qualified immunity—clearly established prong—in addition to a second Motion for Summary Judgment on the constitutionality of the force. Although there is some overlap, this case is ripe for early determination as this case involves hands-on only force (no strikes, Taser, or other force options) and de minimus injury. The "damages" discovery—including claims of loss of employment due to the detention—is not necessary to resolve the issue of qualified immunity. Defendants further anticipate filing Rule 702 Motions to exclude expert testimony, as deemed necessary.**

8. Whether the case is suitable for reference to a United States Magistrate Judge or a special master;

**Parties do not believe the case is suitable for reference to a United States Magistrate or special master.**

9. The status of related cases pending before other judges of this Court or before other courts.

**No related cases.**

10. A description of the parties' discussions of initial disclosures under Fed. R. Civ. P. 26(a).
**This is not a complex case with two or three witnesses outside of the parties. The defendants possess the other relevant documentation (Officer Body Cam videos, 911 recording, CAD dispatch information, and the training and disciplinary records of the defendants). All case related documents will be produced with Defendants' initial disclosure statement. Discovery, on the defense side, will be focused on damages related information.**

11. Proposed deadlines (month/day/year) for:

(a) filing motions to amend the Complaint or to join additional parties;
**Not applicable**

(b) completion of all fact discovery;
**April 2, 2027**

(c) disclosure of expert testimony by all parties under Fed. R. Civ. P. 26(a)(2);
**Plaintiff suggests a simultaneous expert disclosure of May 7, 2027**

**Defendant objects to simultaneous expert disclosure. Defendants propose that Plaintiff disclose experts on May 7, 2027 and Defendants disclose experts on June 4, 2027.**

(d) disclosure of rebuttal expert testimony by all parties;
**June 14, 2027**

(e) disclosure of all witnesses, exhibits and other matters under F.R.C. P. 26(a)(3)
**The parties request that the Court set this deadline after the ruling on summary judgment.**

(f) closure of all discovery;
**July 23, 2027**

(g) completing good faith discussions of settlement; and
**April 16, 2027**

(h) filing dispositive motions, including Daubert motions;
**August 20, 2027**

13. The scope of discovery, including any suggested changes in the limitations on discovery imposed by the Federal Rules of Civil Procedure, and whether discovery should be conducted in phases or should be limited to or focused upon particular issues.

**Plaintiff**:
**The scope of discovery is fairly limited, depositions of the parties, maybe a few short witness depositions and possibly expert depositions. No change in the limitations on discovery are necessary.**

**Defendants**:
**Defendants propose a total number of hours, on the record time, shall not exceed 70 hours for all witnesses.**

14. Estimated length of trial, and any suggestions for shortening the trial;

**The parties estimate the trial to take 3 to 4 days.**

15. Whether a jury trial has been requested and whether the request for a jury trial is contested.

**Both sides have requested a jury trial.**

16. The prospects for settlement, including any request to have a settlement conference before another United States District Judge or a Magistrate Judge, or any other request of the Court for assistance in settlement efforts;

**Plaintiff believes a Settlement Conference with a Magistrate Judge will be useful once the parties have conducted preliminary discovery. Defendants believe that settlement is unlikely in this case. The parties have previously discussed settlement and the case did not resolve Should this case not resolve at summary judgment, Defendants will consult with Plaintiff regarding the potential prospect for a settlement conference before a United States Magistrate Judge at that time.**

17. Whether any unusual, difficult, or complex problems or issues exist that require this case to be placed on the complex track for case management purposes (see LRCiv 16.2).

**No.**

18. Any other matters that counsel believe will aid the Court in resolving this case in a just, speedy, and inexpensive manner.

**None.**

Dated this 22nd day of September, 2026

**TAYLOR & GOMEZ, LLP**

/s/ Benjamin Taylor

______________________

Benjamin Taylor
*Counsel for Plaintiff*

WIENEKE LAW GROUP, PLC

/s/ Christina Retts

______________________________

Christina Retts
Suzanne Reed
*Attorneys for Defendants City of Mesa, Brown, and Helfrich*

Original of the foregoing electronically filed this 22nd day of September 2026, with:

Clerk of the United States District Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to ECF registrants.

/s/ Benjamin Taylor